UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BARRY CALHOUN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 4:19 CV 2540 SNLJ |
| ) | |
| STATE FARM FIRE AND CASUALTY ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

Plaintiffs Barry Calhoun and Temima Spetner bring this suit against their insurer, defendant State Farm Fire and Casualty Company, over a dispute regarding coverage for hailstorm damage to their property. Two motions are pending in the case: defendant's motion for summary judgment and plaintiffs' *Daubert* motion to exclude the expert testimony of Larry Herzing. The Court will deny both motions.

### Background

Plaintiffs own an approximately 120-year-old, 3-story home with a clay tile roof in St. Louis. They also have a carriage house on the property. Plaintiffs had a homeowners' insurance policy through defendant that went into effect on October 1, 2017. Defendant's vendor conducted a basic inspection of plaintiffs' home in October 2017 and noted no issues with, or damage to, the home's roof.

A hailstorm occurred over plaintiffs' property in November 2017. In January 2018, during a heavy rain, plaintiffs saw water leaking through their home's third-story ceiling.

Plaintiffs had not had problems with water leaking through the roof before; neither had the prior owner of the home. Plaintiffs hired a company experienced with historic clay tile roofs, Kirberg Company, to inspect the roof. Plaintiffs claim Kirberg advised them their home's roof had been damaged by hail. They filed a claim with defendant for hail damage.

Defendant sent an engineer to inspect the damage. The engineer concluded the November 2017 hailstorm had contributed to cosmetic damage to the copper valleys and gutters on the home's roof but had not damaged its clay tiles. *See* Donan Report, Doc. #64-5 at 3 ("Dents in the soft metal appurtenances have occurred over multiple events, including the November 5, 2017, storm."). Based on the engineer's assessment, defendant agreed to cover replacement of the home roof's copper parts, as well as portions of the carriage house roof. *See* State Farm Claim File, Doc. #64-1 at 5 ("The engineer has clarified that cosmetic damage occurred to copper valleys, ridge and gutters due to multiple storms, and includes November 5, 2017, storm among them. We will proceed to write to replace the copper as well as the 11 slate tiles identified as hail damaged on the carriage house."). There is no dispute that the damage to the copper parts on plaintiffs' roof was a "covered property loss" under the policy that occurred in the policy period. *See* Doc. #74 at 3, 5.

Plaintiffs planned to hire Kirberg to do the repair work. Kirberg advised that plaintiffs needed to replace the home's entire roof and submitted a bid with an estimated cost of more than $500,000. Defendant suggested replacing only the hail-damaged copper parts and asked Kirberg to prepare a bid for just that work. Kirberg prepared a revised proposal for those repairs and for limited repairs to the carriage house, at an estimated cost of about $221,000. But that bid stated that while the home's existing roof underlayment

2

was sound and still served its current purpose, its condition was such that a large repair would compromise its ability to shed water. The bid further stated Kirberg would not warranty defendant's limited repair proposal because the "repair that is suggested by the insurance company would compromise the integrity of the roof which is a condition that did not exist prior to the hail event" and would preclude them from replacing the copper parts in a workmanlike manner. *See* Kirberg Proposal, Doc. #64-8 at 2.

Defendant then sent another contractor experienced with clay tile roofs, Renaissance Roofing, to evaluate the damage and prepare a bid. Renaissance also proposed replacing the entire roof, at a cost around $500,000. A historical roofing systems specialist from Renaissance explained to defendant that they could not replace the copper valleys and gutters without replacing the entire roof, as once they start removing tiles to facilitate the copper replacement, "many problems will arise." *See* Raleigh Email, Doc. #64-15 at 1. That specialist concluded: "if you are accepting valley and gutter replacement on the main roof, this will be a complete reroof." *Id.*

Defendant continued to maintain that it was only responsible for the limited, non-warrantied repair proposal prepared by Kirberg. Plaintiffs eventually signed a contract to replace the roof, apparently believing defendant would pay for it, but defendant maintained it would only cover the cost to replace the copper parts. Defendant paid plaintiffs about $211,000 total and closed the file. Defendant called the last payment it made to plaintiffs "the Replacement Cost Benefit payment." Doc. #64-4.

Plaintiffs again demanded defendant cover whole roof replacement. Defendant denied this demand, stating it is not responsible for the roof's deteriorated underlayment or

3

for warranty of repair work. Plaintiffs then filed this suit. Plaintiffs claim defendant breached the insurance contract by denying their claim for whole roof replacement and only providing coverage for the limited, non-warrantied repair it proposed. Plaintiffs have not replaced the roof, claiming they have been unable to do so because defendant refused to approve their claim or agree to pay enough to cover a proper repair.

### Legal Standard for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting Sys., Inc.*, 368 U.S. 464, 467 (1962). This burden is on the moving party. *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). The court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983).

Missouri law governs interpretation of the insurance policy in this case. *See Secura Ins. v. Horizon Plumbing, Inc.*, 670 F.3d 857, 861 (8th Cir. 2012). In Missouri, interpretation of an insurance policy is a question of law. *Schmitz v. Great Am. Assur. Co.*, 337 S.W.3d 700, 705 (Mo. banc 2011). The "'cardinal rule'" for contract interpretation is to "'ascertain the intention of the parties and to give effect to that intention.'" *Secura*, 670 F.3d at 861 (quoting *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. 1973)). "The parties' intent is presumptively expressed by the plain and ordinary meaning of the policy's provisions, read in the context of the policy as a whole." *Id.*

(cleaned up). "When interpreting the terms of an insurance policy, [the Missouri Supreme] Court applies the meaning that would be understood by an ordinary person of average understanding purchasing the insurance." *Schmitz*, 337 S.W.3d at 705-06.

## Summary Judgment Analysis

Plaintiffs' policy includes replacement cost coverage for covered losses to their home. The policy's applicable Replacement Cost Loss Settlement provision reads, in relevant part:

**SECTION I – LOSS SETTLEMENT**

Only the Loss Settlement provisions shown in the Declarations apply. We will settle covered property losses according to the following.

**COVERAGE A – DWELLING**

1. **A1 – Replacement Cost Loss Settlement – Similar Construction**.

   a. We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property . . . subject to the following:

   (1) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the Declarations, not to exceed the cost to repair or replace the damaged part of the property;

   (2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less;

> (3) <u>to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss</u>, and notify us within 30 days after the work has been completed.

State Farm Homeowners Policy, Doc. #1-4 at 26 (emphasis added).

1. **Defendant is not entitled to summary judgment on the basis that plaintiffs did not replace the roof while the parties litigated coverage.**

Defendant seeks summary judgment on several bases, all of which fail. First, defendant argues plaintiffs cannot recover the cost to replace their whole roof because they did not make repairs within two years of the date of loss, as subsection three of the Loss Settlement provision requires. Defendant then argues that plaintiffs are limited to the actual cash value of their damaged property, which they do not have evidence of, meaning defendant is entitled to summary judgment.

The Court reviews the facts in the light most favorable to plaintiffs, as it must at this stage. *See Buller*, 706 F.2d at 846. As the initial paragraph of this section states, the Loss Settlement provision governs settlement of "covered property losses." Defendant asserts that "covered property losses" unambiguously means "property loss that is covered under the policy." *See* Doc. #74 at 8. Plaintiff does not disagree with this meaning.

While settling plaintiffs' insurance claim, defendant maintained the only property loss covered under the policy was the damage to the copper parts. However, two contractors who examined the roof said that replacing the copper parts would cause damage that would require whole roof replacement. Subsection (2) of the policy states that "when the repair or replacement is actually completed, we will pay the <u>covered additional amount</u>

6

you actually and necessarily spend to repair or replace the damaged part of the property" (emphasis added). Defendant denied that it would pay for roof replacement, even if actually and necessarily spent to repair the copper parts, so plaintiff never initiated repair of the copper parts. Although defendant thus says plaintiff forfeited payment for the roof replacement because it did not repair the copper parts within two years of the loss, as required by Subsection (3), that subsection applies to "additional payments" apparently described in Subsection (2). Because Subsection (2) refers to any "covered additional amount," and because defendant disclaimed coverage of the roof replacement as a "covered additional amount" to be spent on the repairs, defendant cannot now hinge its failure to pay on the two-year limitation. *Cf. Olga Despotis Trust v. Cincinnati Ins. Co.*, 867 F.3d 1054, 1062 (8th Cir. 2017); *Hillis v. Blanchard*, 433 S.W.2d 276, 279 (Mo. banc 1968).

Defendant also argues plaintiffs "have not come forward with any evidence that repair or replacement of the tile component actually would have been necessary to effectuate the copper component repair." Doc. #74 at 6. It is unclear how defendant could make that argument in good faith on this record. While defendant disputes this issue, plaintiffs clearly put forward evidence that could support such a finding, including an email to defendant—from a contractor defendant hired—stating that repair of the copper parts would require replacement of the whole roof.

The Court rejects all of defendant's other arguments on this point, including that the two-year requirement applied to roof replacement because defendant paid plaintiffs *something*, though it made clear it would not cover roof replacement even if the copper repairs made it necessary. This argument does not comport with the policy language, the

7

case law, or the record. To the extent defendant makes arguments now that contradict the position it took while settling plaintiffs' claim—including that plaintiffs should have proceeded with repairs because defendant may have reversed course and paid for whole roof replacement if the copper repairs necessitated it—the Court will not grant defendant summary judgment based on a new position that contradicts the record. Defendant is not entitled to summary judgment based on the two-year replacement provision.

**2. Defendant is not entitled to summary judgment on the basis that plaintiffs cannot prove that their roof was damaged during the policy period.**

Defendant's next argument is that plaintiffs cannot prove what part of their roof, if any, was damaged in the November 2017 hailstorm, as opposed to hailstorms in 2011 and 2012. But defendant's supplemental briefing admits plaintiffs suffered a covered loss to the copper parts on their roof during the policy period. As such, this argument appears to be abandoned. Even if not, plaintiffs point to such evidence, including defendant's own pre-loss inspection report,[1] along with evidence that their roof did not leak before the November 2017 hailstorm; that it did leak after that storm; that the contractor they called to find out why their roof was leaking told them it was hail damaged; that the size of the hail that fell in the November 2017 storm could put holes in clay tiles; and that there are holes in their clay tiles. Defendant is not entitled to summary judgment on this basis.

---

[1] To the extent defendant objects to plaintiff's citation to defendant's own report, which defendant itself produced after the close of discovery and after briefing on the subject motions, such objection is overruled.

8

**3. Defendant is not entitled to summary judgment on the issues related to interior damage to plaintiffs' home.**

Defendant's remaining arguments appear to be a mix of summary judgment arguments and discovery issues. Defendant argues plaintiffs do not have evidence showing the water leaking through their roof was caused by the November 2017 hailstorm. The evidence described above is sufficient for plaintiffs to withstand summary judgment.

Defendant also argues plaintiffs failed to identify evidence or any witness to testify about the cost of interior repairs or the actual cash value of the interior damages. As explained above, the Court rejects defendant's actual cash value argument as a basis for summary judgment. Regarding evidence of interior damage, plaintiffs did identify a relevant contractor in their interrogatories, Mike Ruggeri, and disclosed that he had evidence of their damages and had made interior repairs. Plaintiffs themselves can also testify about the interior damage and costs incurred.

The Court rejects defendant's argument that it can disregard Ruggeri's potential testimony because plaintiffs did not identify him in their initial disclosures. Plaintiffs clearly and timely identified him in their interrogatory answers. *See* Fed. R. Civ. P. 26(e)(1)(A) (explaining parties must supplement their Rule 26 disclosures if additional information "has not otherwise been made known to the other parties during the discovery process"). Defendant had notice that Ruggeri has knowledge of plaintiffs' interior repairs and damages. To the extent defendant claims plaintiffs failed to disclose invoices from Ruggeri they promised to provide, the record is unclear, and the parties did not fully brief this. Plaintiffs' interrogatory response said they would disclose such documents in their

9

possession. Plaintiff Calhoun testified he did not have copies of the invoices, but he thought Ruggeri would. If plaintiffs try to admit documents they did not properly disclose, defendant can object. But defendant has not shown that plaintiffs cannot recover for interior damage to their home or prove those damages.

For all these reasons, defendant has not met its burden of showing it is entitled to judgment as a matter of law. The Court will deny defendant's motion.

### Plaintiffs' Motion to Exclude Expert Testimony

Plaintiffs move to exclude expert testimony from defendant's retained expert, Larry Herzing.[2] Plaintiffs argue Herzing does not have sufficient knowledge, experience, or expertise in the repair or replacement of clay tile roofs because he has not installed a clay tile roof himself and does not have training on installing or repairing them. They also argue Herzing did not verify the pricing information he used in his proposal, instead relying on outdated bids from prior contractors' proposals, and is not familiar with the historic preservation requirements that apply to the district in which plaintiffs' home is located. For these reasons, plaintiffs argue Herzing is not qualified as an expert in the areas in which he will testify and his proposed testimony is not "based on sufficient facts or data" and should be excluded. *See* Fed. R. Evid. 702(b).

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. Witnesses may provide expert testimony if they are qualified to offer such testimony based on their knowledge, skill, experience, education, or training; if their specialized knowledge

---

[2] Though plaintiffs' motion is labeled as a motion for *Daubert* hearing and a motion to exclude, plaintiffs' briefing does not request a hearing. The Court does not need a hearing on the motion.

will help the fact finder understand the evidence or determine a fact in issue; and if the testimony is sufficiently reliable. *See* Fed. R. Evid. 702. The rule is one of admissibility, not exclusion. *See Shuck v. CNH Am., LLC*, 498 F.3d 868, 874 (8th Cir. 2007).

In his deposition, Herzing testified defendant asked him to "form an opinion on the items that were hail damaged and to provide a cost base estimate for those items to be replaced." Doc. #46-6 at 8. Defendant indicates Herzing may testify about the extent of hail damage to plaintiffs' roof, the cause of leaks, how to replace the copper valleys, and his estimate of costs for those repairs. Herzing's repair recommendation describes his proposed method to replace the copper valleys, "the only item that [he is] confident that is hail damaged." Doc. #54-2 at 2. Herzing estimates the costs to replace the valleys, noting that once tiles are removed, they may need to replace additional wood or underlayment to complete the valley replacement.

Defendant provided Herzing's curriculum vitae and an affidavit from Herzing describing his relevant qualifications. Herzing has worked in the roofing industry for over 20 years and has owned his own roofing and siding company for 5 years. He has supervised the repair and replacement of more than 10,000 roofs during his career. Every job he has held for the last 20 years has included some level of assessing storm damage to roofs. While Herzing has not personally installed any clay tile roofs, he has supervised the construction or installation of approximately half a dozen. From 2004 to 2006, his work included assessing damage to clay tile roofs. From 2009 to 2015, he was trained to be a certified roof inspector. This included training on how to assess clay tile roofs for storm damage, including damage from wind and hail. He has received other training on

11

performing estimates and determining the cause of roof damage, including on clay tile roofs. More recently, he supervised replacement of a clay tile roof with synthetic roofing materials, which, he claims, involves the same principles as installing or replacing clay tiles. Defendant has shown Herzing is sufficiently qualified to assess storm damage to clay tile roofs and to estimate the cost of repairs.

Plaintiffs also challenge the reliability of Herzing's testimony, arguing it is not sufficiently reliable because he used pricing from prior contractors' bids for his cost estimate, rather than confirming pricing himself, and because he did not review the requirements for the historic district in which plaintiffs' home is located when preparing his report. "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Bonner v. ISP Tech., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001) (quotation marks omitted). An expert's opinion must be excluded only if it "is so fundamentally unsupported that it can offer no assistance to the jury." *Id.* at 929-30 (quotation marks omitted).

Plaintiffs do not argue that the prior bids Herzing relied on were unreliable. Rather, they argue that pricing has increased since those bids were made. In his deposition, Herzing explained how he would go about adjusting a bid for current prices and his expectation that insurance would cover material price increases. "'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 694 (8th Cir. 2001) (quoting

12

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993)).  The same principle applies to plaintiffs' general reference to historic district requirements, particularly as they have not identified anything about these requirements that would impact Herzing's opinions.  The Court finds no basis at this point to exclude Herzing's proposed expert testimony.  The Court will continue to exercise its gatekeeping function at trial to ensure his testimony does not exceed his scope of expertise.  *See Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001).

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [#43] is DENIED.

**IT IS FURTHER ORDERED** that plaintiffs' motion for Daubert hearing and motion to exclude expert testimony of Larry Herzing [#45] is DENIED.

Dated this 31st day of August, 2021.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE